Before we get started, Mr. Nelson, Ms. Untz, and Ms. Dragsteth, we'd like to talk for a minute about timing. It really doesn't make sense to have two 30-minute separated time periods. We were discussing it earlier, and we think what we would like to do is give you 20 minutes to divide how you will, and then give you each 10 minutes as appellees. Is that acceptable? No objection, Your Honor. We would just like to reserve five minutes for rebuttal. Okay, so he'll get 20 minutes, and that 20 should be rebuttal time. Your clock is at 20, and I'll remind you when it hits five minutes, if I can keep track. Great. Thank you, Your Honor. And may it please the Court, I want to start with two undisputed points. First, Google and the PTO concede that the prior art reference, Ad Force, only invalidates the claims here if creation or generation occurs solely at the seller interface. Before we get too deep, can I ask you a bigger picture question, which is you have another case pending before our Court, which raises the same claim construction issue. That case was heard last July, so one might imagine that at some point before we would write an So if that opinion were to go against you on claim construction, I'm going to ask you both versions. If that opinion were to go against you on claim construction, what remains in this case? Well, there still is a broadest reasonable construction argument about whether the claims are valid or not. And so if the claims are valid, what can we do in another appeal, for example, to bring it against another party? So if, for example, in the litigation... I don't follow you. If the other Court were to construe the claim to decisively say what it is, what they are as a matter of law, and they go against you, I don't understand how there would remain a claim construction issue for us. Yes, Your Honor. So in the litigation appeal, four of the eight claims are valid. They did not appeal that. Okay, so those four claims remain, and you're going to tell me what, under Section 317, that those four claims need to be sucked back out of the whole re-exam? Correct, Your Honor. That's exactly right. So that would remain. But you're not arguing there would remain a separate or distinct claim construction issue? No, Your Honor. That's right. That's correct. That's right. And so on that claim construction point, it is the exact same. You're right. The question here is whether the creation occurs... And of course, if you prevail in this other case, then you prevail here, right? I think they would disagree with that. They would say they had or still renders anticipated your claim? I think the answer would be that there's a broadest reasonable construction here, and I don't mean to speak for them. I'll ask them to, don't worry. But we would agree with you, but I think, in fairness to the other side, they would say that there is a slightly different standard. But the issue, the fundamental issue, is the same, and it's whether the creation occurs at the seller interface or whether it occurs in whole or in part at the central controller. And so that is the entire dispute. And so that's undisputed. The second point is Google and the PTO acknowledge, as they must, that the presentation generation program is at the central controller. So the question is whether processing the advertisements at the central controller through the presentation generation program generates or creates an advertisement. And on this point, this is actually, at least according to the PTO, a third undisputed point. This is, I'm looking at the 059 brief, it's the same thing in the 025 brief. At the top of page 32, the PTO says, to the extent generation or creation by the PGP is disclosed, it must therefore be a limited technical step that takes place during the processing phase of the invention. We couldn't have said it any better ourselves. The same thing they actually say on page 7 of the 025 brief, page 9 of the 059 brief, that the PGP formats and then creates, or in other descriptions, creates, generates or creates. That's exactly what we are saying. So in all formulations, all presentations have to go through the presentation generation program. So I'm going to move you along to the issues unique to this case. Because, quite frankly, the other case, when it comes out, will be binding precedent on us. And so, you know, the ship has sailed. Whether you win or lost, the ship is going to be sailing and we're not on it. So why don't you focus on the issues more unique to this case, which are the Ad Force issues, and what it does or doesn't disclose. Would you mind if I turn to you? Of course not. No, I think the issue with Ad Force, and the Ad Force issue is also in the litigation as well, but the issue with Ad Force is where does the creation occur? Well, the Ad Force issue is in the litigation below, but as I understand the litigation below, the verdict or the JML was unspecific as to what was being decided. So it would seem to me that regardless of what happened for you in that case, the Ad Force issue is still here for us to resolve. Correct, Your Honor. That is true. So the first of it, it depends on the claim construction. If the court, if the other panel were to go against us on claim construction, we believe that Ad Force would still not render these patents and these claims invalid. Because under the claims, whether it's at the seller interface or at the central controller, you still need to have some type of creation occur. And if you look at the record at A2102, which is the Ad Force creation guide, it states in bold letters, important, the submitted creative must be entirely correct when it is submitted. And there is no doubt about that. And they call that the advertisement. The PTO and Google also call that the advertisement. They have tried to construct an argument that the alt text to go along with the advertisement is somehow the advertisement, is creating a new advertisement. But that makes absolutely no sense because Ad Force specifically describes over and over again, both in the instruction manual and also in what's called the tech doc, which is also in the record, that the submitted advertisement must be entirely correct. Alt text does describe an ad, but it does not have to be there. And the advertisement exists regardless. The other thing that both the PTO and Google have pointed to is the hyperlink that happens when you click on the ad. But that's exactly what it sounds like. It's what happens when you click on the ad. But it is not the advertisement itself. Ad Force cannot be clearer that at no point, either at the seller interface or at the central controller, is an advertisement created. And because there is no advertisement created at either point, Ad Force... If I were looking at a webpage and I thought that webpage appeared to me to be an advertisement, what about the hypertext link? Why isn't that part of the advertisement? The underlining, the fact that it's folded or highlighted, the fact that my cursor goes over it, it could jump me over to another site. Well, that's not what Ad Force describes, number one. But number two, in that situation, I don't think that is the advertisement. That is underlying what happens when you click on the advertisement. That's what happens when you hover over the advertisement. That is not the advertisement. That is not the banner ad that exists. So because of that, there is no creation anywhere. And since there is no creation anywhere, then we are left with the situation that regardless of how you interpret the claims, Ad Force simply does not anticipate these claims in any way whatsoever. The ad isn't created by uploading content, that is the ad, banner, hypertext, and then alt text? No, Your Honor. The ad is – if you look again at A2102, it specifically states that it's the submitted advertisement. So the advertisement has already been created before it goes into the system. And then – I'm sorry, Your Honor. The advertising content has been created. No, Your Honor. At A2102, it states – It does not state advertising content. It states, important, the submitted advertisements must be entirely correct. And this is on A2102 with the 1381 appeal. I apologize. This has been very frustrating. These two sets of appendices with all the same content located in totally different places. It's been really frustrating. I don't know what you could do about that. I sympathize, Your Honor. In future cases, you can find a way to help avoid it. The submitted advertisements must be entirely correct and follow Ad Force services' rich media ad guidelines or campaign delivery can be delayed. It doesn't talk about advertising content. It talks about the advertisements. And that's exactly why we think that by the time it gets there and the tech doc that's also in the appendix lays out in even more detail exactly how to create the advertisement. Now, they will say that there is the ability – if you go a couple more pages, it does say that there is ability to add alt text. The alt text is a description of the ad. It doesn't even allow you to do it in all formulations, whether in iframe or Java or others. There are some where you can't even use alt text. If Google and Apiccio were correct, then in that situation, there would be no advertisements. That can't be correct. The advertisement is here. The advertisement has been submitted. It has been created already at this point. So that is why we think that according to Ad Force's own disclosure, it cannot be anything other than that the creation has occurred before it even gets to the seller interface. And if that's true, then Ad Force doesn't anticipate regardless of anything else. So I think the other major – I want to spend some more time on this if the panel has any more questions on the Ad Force reference, because we think it's critical that regardless of whether it's the seller interface or not – but I think if not, then I'll move to the other issue, which I think is specific to these appeals as opposed to the litigation appeal, and that is the dependent claims, and specifically the four dependent claims that the litigation – that are valid after the litigation. And those claims, we are essentially stuck at the PTO. You're saying claims 52, 63, 90, and 231. That's correct. Of the 025,000. Of the 025. The 059, it stands or falls. Right. But these four claims were held by the district court to be not invalid. That's correct. They were challenged below by the same parties that issued the re-exam. Correct. But were held not to be invalid. That's exactly right. And so your argument is section 317 of the code, which I understand has been modified recently, but – But not in relevant part. And not – yeah, it wouldn't apply retroactively. Right. Right. I'm sorry. I'm just trying to figure this out. The section 317 of the 35 U.S.C. says this is the estoppel, right? Interparties, they don't get to challenge – it could be an ex parte challenging these four claims, but not an interparte proceeding. Is that right? That's right. Once you do an interparties challenge, which this absolutely is, that once there is a final decision of no invalidity, which there is, then the re-examination cannot be maintained. And because we are here, despite that fact, we believe that at least with respect to those four claims, that the re-examination has to go away. We have asked for that relief at the Patent and Trademark Office. We asked it almost as soon as possible after Google did not appeal the judgment of validity. It became – they had up to October 30th of 2011 to appeal that. We filed in early December our request with the PTO to terminate. They essentially immediately denied it. We asked for it to become final so that we could then appeal it. They have – that was in March of 2012, and they're sitting on it. They acted on the first petition within a month and a half, and they are still sitting on the petition to terminate so that we can take that appeal. But under 317B, the office cannot maintain anything where there is a final judgment. One other point on that, which is that the issues specific to those four claims don't depend on a litigation appeal. That's a separate claim construction issue that the district court held that they did not meet their burden to show on those issues that they could actually maintain to show that there is no anticipation. So that's why he granted a judgment of no on validity. They did not appeal that. And in the appeal at the Federal Circuit, did they cross-appeal the finding of no on validity of those claims? They did not, and that – they had until October 30th to do that. So we filed our – actually our notice of appeal on October 5th, but we filed it a couple days after the final judgment of September 30th. And so they had either the later of 14 days after our notice or 30 days from the final judgment, which is October 30th, to do that. They did not cross-appeal, so at that point it became final. So we do believe that under the claim construction that we have posited that it is at the central controller and that the claims of the – that claim one shows that the structure. It says prompted to input information to select and input information to create. It doesn't say prompted to create or prompted to select. I understand that that is also tied up with the litigation appeal, but we do think that looking at this as – at any type of de novo claim construction review, that it is important that we get it right and that there is no possible way under the – any type of contextual reading of the claims that the creation can occur at the seller interface. And we just totally disagree with that. It says prompted to create – to input information to create and prompted to input information to select, not to create or select. And in fact, importantly I think, and this does go to this appeal, the – to meet their burden – It's rebuttal time. I told you I'd give you the warning. Keep going, but you're using it. Thank you, Your Honor, and I'll make one quick point and then say the rest for rebuttal. With respect to Ad Force, they have stated that they – Ad Force meets the selection limitation even though the central controller is performing the task of selecting. The language – if you look at the language of Claim 1 of the 025, it is the exact same verbiage between prompted to input information to select and prompted to input information to create. They cannot have it both ways. They cannot say that on the one hand, the controller selects for purposes of selection, but that the seller selects or creates for purposes of creation. That does not hold water. Thank you, Your Honor. I'll move on. Good morning, and may it please the Court. There are two main issues in this case. One is the claim construction issue that the Court alluded to. The PTO believes that the Board correctly construed the claims under the broadest reasonable interpretation to not require the controller to create the advocacy. If our Court should issue an opinion that is favorable in terms of – basically follows the same construction that you all had suggested you were going to adopt, what's left in this case? Do you agree with Mr. Nelson's suggestion that what's left is we've got to figure out what to do with the four claims that were found not invalid below, and we have to still look at Ad Force to see whether it discloses all of the elements? Yeah, a couple of points on that. The claims are not completely full overlap in that case and this case. So there are several claims at issue in that case. There are more claims at issue in this case. There are several overlapping claims. And then there's the four claims on which GMLL was granted in the district court litigation. So what's left here, I do think that officially, at least, claim construction has to be reached as to these claims, although it's likely that whatever the Court would do in the other case, since the independent claims are the same, it would want to do here as well. So you're saying just as a technicality. Yes. You're not saying that we would be free to reach a different claim construction than our colleagues if they issued an opinion first saying claim one, the independent claim, this limitation means X. We're not free in the dependent claim to say that it doesn't mean X, it means X-plot primed or Y or something like that if it's the same language. Well, Your Honor, at least for the technicality. But given that the other case is a district court decision and this is an appeal from patentability and the PTO, we're under the broadest reasonable interpretation here, and the standard of proof is different. Wait, wait. Hold on. Once the Federal Circuit has issued a claim construction and it is a matter of law, are you suggesting then the PTO would be free under a theory of broadest reasonable interpretation to adopt a broader and different construction? Well, Your Honor, in terms of the 317 issue where there's a direct decision on the particular claims, certainly that would raise an interesting legal issue. I don't know that we absolutely have to get to it here. I mean, if as it happens the... Well, we'd have to get to it if the Federal Circuit should rule against or in favor of Mr. Nelson's client in the other case, right? Then we'd be confronted with a situation where there's a Federal Circuit decision on claim construction of the exact same term here, you all have a different construction than what the Federal Circuit has said the construction would be. So we would be directly confronted with this issue in this case, whether or not the PTO under some theory of broader reasonable construction could adopt a construction that differs from what the Federal Circuit has already said the construction should be. So I think we'd be presented with it directly. Although it's not on direct appeal here, as Function Media has conceded in both of its reply and its blue brief, that issue is before the PTO, before the petition's office. The petition's office did rule on that issue initially, and there's a petition for reconsideration pending at the petition's office. The petition's office... So that issue is not on direct appeal here. If there were to be a direct appeal, would it be an appeal of the PTO's decision in that? No, maybe we misunderstand each other. I guess what I'm saying is, if our other case decides claim construction in a way that favors Mr. Nelson, then in this case, I'm reviewing a board decision on claim construction, which is a different claim construction than what my court has already said I'm bound to follow. So is there a theory, like broadest reasonable construction, that gives me the authority to say, well, the PTO is right in this case, because they can apply a different theory of claim construction than what happened at the district court? Or am I bound by that other decision, such that I have to just apply it here, too? Your Honor, it is my understanding that under the broadest reasonable construction, that is a broader standard than the district court claim construction. So there could be... Now, I do think that... But it's not a question of the district court's construction. It's a question of the court of appeals. Thank you for correcting me, Your Honor. The marketing construction, I probably use that term more. The construction is appropriate for validity purposes, as opposed to patentability purposes. But it may be that this is an academic, that this ends up being an academic question here, Your Honors, because I think in this case, that the constructions will be the same, ultimately. I think that the construction the PTO urges is the same substantively as the construction that was adopted by the district court. And I would urge both courts to adopt that construction, that the controller need not exclusively be required to create the advertisement here. Both the district court and the PTO were consistent on that point. The plain language of the claims and the specification supports that kind of a construction. And there are a number of embodiments in the specification that... What do we do with these four claims? And why hasn't the PTO acted to remove them from the reexamination? Well, the PTO's petition is in the fairly lengthy appendix in the 1381 case at A7268. And the petition was filed before this case was... Yes, but the statute says, 35 U.S.C. 317, says once there is a final judgment... But, Your Honor, it hasn't been... And it must not thereafter be maintained by the office. It doesn't say you can't initiate new actions. The office is not permitted to maintain any action challenging claims in an inter-parties reexamination that have been adjudicated positively by the district court. Yes, Your Honor. With the statute, though, a final decision has not been entered against the party in this case. Now, it might be when the Federal Circuit rules, but... But final decision, you mean final... Once a final decision has been entered against a party in a civil action under... You're saying that it's not a final decision... You're saying a final decision is not the same as a final judgment. I'm saying it's a... Well, a final judgment hasn't been entered here either. I'm saying I think that they're the same. There's no... It's not... There's a district court decision that's been entered. It's on appeal to the Federal Circuit. It's not final at this point. The case isn't final. The case isn't final. So there's no final decision yet in that action. So it's not yet triggered. Now, if the Federal Circuit in that action does enter a final decision, it's still not final until a mandate issue. But they didn't appeal. There's no appeal of the invalidity determination. So why isn't it final as to invalidity since the time for appealing it has expired for those four claims? Well, but there was no judgment. There's no partial judgment entered at the district court. You agree. There's no way that at this point in time that can be overturned. No appeal was filed.  They're not at issue in the case. If this court's decision in that case were to remand that case to the trial court, since those dependent claims rest on the construction of the independent claims, the trial court could vacate... Or if the decision is to vacate, the trial court could easily decide to hold a new trial on the entire set of claims, Your Honor. And our office is... The PTO's opalist position, and that matters. But that is not a final decision under the statute. Your Honor, and I understand... May it please the court, if I could move to the ad force anticipation question while I'm still up here. Your Honor, I believe that substantial evidence does support the board's determination that ad force anticipates. The ad force reference does refer to uploaded content. It sometimes refers to that as a banner. It sometimes refers to that as a creative. It sometimes refers to that as an advertisement. It's a bit loose in its language. But the board found that that is simply one component of a complete advertisement. But both the hypertext, which is the link that one would click through when one clicks on the ad, and also the alt text, which is the text that appears when a mouse hovers over the ad, are components of the completed advertisement as the board found. And as such, an ad is created at the user interface with an ad force. Simply because there's no limit in the claims as to how many components are a minimum requirement of components that must be entered to create an ad. For example, in the claim system, if there was merely a text ad, 30 characters on a car that's to be sold, that's pretty much the component of the ad. There's no minimum requirement of how many components must be required. This is not an inherency case. The system does require and does permit an ad to be created from the addition of these various elements. Even if at some point alt text is not entered, that would not change the anticipation analysis here. Beyond that, Your Honor, we do, PTO does believe that, and did say in its brief, that in reference to the specification passages that function media sites, there are some references to the specification of ad creation by the PGP 1710, but those are used solely as equivalent to technical generation. For example, one would create a brief by writing it, or create an electronic brief by writing it, but then the generation would be like generating a PDF. It's simply a technical step, and that's the way consistently throughout the specification that both the 059 and the 025 patent use that term. Beyond that, Your Honor, I'm sorry, I accept this chance. I don't want to get drawn into the issues of poor claims, but I will note a footnote in a felon's brief that said this issue is not right, in the blue brief. Well, you may not want to get dragged into it. But, I mean, I'm looking in your district court litigation, and at 7216 of the appendix, there's a final judgment in which those claims were adjudicated to be not invalid. So I guess I'd like your position on what we should, I know you don't want to, but I'd like your valuable contribution to this. Is there some reason you think those four claims should remain in the re-exam? Both because of the policy of the Patent Office, but that's one I really don't want to get dragged into. That's fine. I'll let you off that one. But on the procedure, they are asking, if you listen to the oral argument from the litigation, they are suggesting that there's some hidden meaning of creation in that case, and that they're asking for a better construction of creation. So if that construction changes, then the district court needs to look at the issue again. But the construction, the way it was, we were fine with the result. But if the construction changes, then it needs to go. Now, separately from that, close to their policy, the decision to keep those claims in should not affect the PTO on this particular situation where one party decides not to keep claims in because of strategic reasons, what have you. But that's probably a better argument for the PTO to make than for me to make. I want to talk a little bit about our supposed concession. I may have missed it, but what I heard is not the concession that I think we made. What I heard was that we concede that we lose unless the creation happens only at the seller interface or at the client side of the system. That's not the concession. At most, we would say that we have a problem if creation occurs only on the server side. And if you look at the blue brief as it came out, the argument was the claims of the patent are limited to server side. And we said, no, claims are open to anybody. They're agnostic. The client server. If you look at the gray brief, it starts to slide over and talks about creation activity occurring on the server side. So there's this blend now that came into the case after our briefing that says, well, you know, the claims allow, yeah, the patent does talk about stuff happening on the client side and the server side or the PGP and the client interface. There's a lot of different terms here, but I think you guys understand. And our concession, if there is one, would be only on the server side. But that's not the patent. That's not anybody. Everybody has something happening on the client side. So the concession is not accurate. Now, the point, I think, Judge Wallach, you were right on point talking about the alt text, and that's what we wanted to focus on anyway. What I would direct you to, and this is the 059 patent, but it's in both patents, the definition section. And they define presentation and they define advertising. Advertising is in column 11, around line 16 to 22. Presentation, which appellants have equated to creation, that's the theme of the blue brief, is in column 14, lines 47 to 52. And this is a key point to take apart. You were right on your point, Judge Wallach. Presentation is defined in the patent. The way the patent uses the word presentation and thus uses the word advertising is that it's any content, not a completed thing, not something packaged up, not whatever shipped, any content intended to inform or influence the viewers or readers of a given media venue. Any content to inform or influence. Alt text does that. When you hover over, alt text informs the viewer of the media. And under a substantial evidence standard review, it definitely does that. And that closes out all of the argument you heard from appellant today. We've got plenty of other arguments why the claims, but I think with the motion from the blue brief to the gray brief, those have gone all right for us. The claim language clearly processing does not mean creation. Would you mind turning to 2102 of the Ad Force reference and responding to Mr. Nelson's argument about how it refers to advertisement. It refers to what it's receiving as the advertisement. So tell me why we should say no, the advertisement is the thing with the hypertext link and the alt. Okay, two points. The first time they've ever completed that sentence was today. This is the sentence where it says that your advertisement should be complete, et cetera, et cetera. The sentence ends with, or your advertisement will be held up in the process. Something like that. I'm paraphrasing a bit, but I think it's accurate. That's one important point. Because if you actually look at campaign delivery, it can be delayed. Thank you, Your Honor. If you actually look at their patent, they have the same thing when they're talking about the embodiment that we like that generally appellant doesn't look at. They talk about redundancy. Looking for the passage on redundancy. For example, page A108, column 24 and line 61, going across 25, it says, and if you want the other patent, the 025, it's A80, starting at column 19, line 60. It says, with the same rules and guidelines as those in the presentation rules database applied and enforced during data input at the seller interface. They have rules, too, and they're enforcing them at the input database. They say, all presentations created by this presentation and configure program will result in, I'll jump down because it's a long passage. It says, as the seller's information, the presentation and configuration program, 4715, using the information contained in the presentation rules database, controls and monitors that entered information to conform to the controlling format and style for each targeted media venue or outlet presentation. That's exactly what AdForce is doing. The fact that, yes, they do a check afterward. They talk about how this could be redundant, but they do a check afterward. Sure, AdForce does the same thing. You enter in your information, and then the server side checks it. That's why it's checked on the client side. That's why you have to be compliant. Then they check again on the server side. The distinctions they're making are wordplay somewhat. The use of the term advertisement. It's not really wordplay because it's what the reference discloses. You're not making it up. I'll take it from another angle. The word advertisement, if you look at the use in context, what they're saying in the AdForce reference, is they're saying all of these fields, the URL, the alt text, the GIF file has to be attached. What they mean by the advertisement has to be corrected. You've got to have the right GIF file attached. You have to have the alt text. Well, you don't have to. That's optional. Those things have to be filled out properly. They're not saying that you have to have this package ready to ship to a web page. That's what they mean when they say the advertisement is complete. But, importantly, if you use the meaning of the word advertise or advertisement or are data that informs the viewer, especially the alt text. And so what you have to do is use their definition of advertisement, which is broad. They chose it. They had the power of the pen. They could have picked something narrower, but instead they picked about the broadest definition you could have of advertisement. Any content that provides information to the viewer. So what is submitted in AdForce is the advertisement. When it's packaged up, you get the complete advertisement. You look in their gray brief, they've kind of slipped to saying, well, there's creation and then there's recreation and so on. You could say that same thing about AdForce. So let me make sure I understand your argument because I think I do, which is they defined advertisement. It's been defined in this case as any content that provides info to the user. And even though AdForce might talk about the advertisement and its use of that word, it's really not the advertisement in complete form because the advertisement is not complete until you have the alt text and the hypertext link because all those things provide information to the user. Right. And that you package them. What you ship out is all of that together. So there's still processing going on on the server side with AdForce. When they say the advertisement is complete, I want to call it colloquial, but it's not using the exact meaning of advertisement. I mean, you could say it's the same meaning. Say each of those pieces is an advertisement under the super broad meaning of the patent and that the packaged thing is also the advertisement or a advertisement. Thus, there is processing going on on the server side. So you don't need to say that the meaning of advertisement is different, but you can. It gets you there either way. Just don't get confused by the difference in the wording. As far as the rest of it, I think plain meaning, the one place I'll focus you, they focus heavily on let's look at the context of the spec and so on. You read a claim in light of the specification. That's hortatory language, right? Equally as hortatory as, but you can't read a limitation in the claim from the spec. That's a circle at the end of the day, right? Without anything more to guide you. So what do we have to guide us? We have In Re Bisio. We've cited it in our brief. They cite In Re Sutco. Sutco says look at the spec. But if you look at Sutco, that was a claim in a re-exam that was already narrow. You go to In Re Bisio and it says, listen, if the claim itself is not narrow, then you have to have a clear and unambiguous disclaimer from the spec. And they've never argued for a clear and unambiguous disclaimer. Final thought? Yep. They have the power to draft. They drafted broadly. They can argue broadly now, but they never drafted broadly when they're supposed to. One other thing. What Ed Force actually says is the submitted advertisements, plural. So we have no idea what. And we'll go with you on that one. Thank you. A few points, and I'll address right on the advertisement versus presentation first. I'm saying singular versus plural. I understand, Judge Wallach, and I think if you read it in context, there's no, they're not talking about any one that you upload. And in fact, the following pages, if you, for example, turn to just the next few pages, all around the 10 pages either side, it talks about uploading one particular advertisement, not doing advertisements. I don't think there's any meaningful difference between advertisements and advertisement. There is a difference between advertisement and presentation. Google came and said that it was, well, presentation means this, so therefore advertisement means that. But the claim says advertisement. It doesn't say presentation. And the presentation, just to step back a second about what these claims are all about, it's about matching the formatting, the color, the style of what the internet media venues are doing on the one hand, and what the seller does. All the seller has to do is enter information. And so to say that that can be a presentation, the presentation is what appears to the viewer. That is what is being presented. And what is not being presented is the hyperlink or the alt text. And to say that somehow, again, under their theory, that there would be no advertisement if they didn't put in alt text, that cannot be correct. Because the advertisement is final when it is submitted through the AdForce system. They don't have to put in alt text. They do have to, sorry, go ahead. I don't think that's what they said, that you had to have alt text. They said you could have alt text. That is true. But they have also said that without alt text, there is no advertisement. And they said that in their briefing. I think I just heard them say that. Okay. But I think, I wish I had the site right here to show you, but they do talk about that. We hit that heavily in our reply brief. So I would point you to our reply brief on that point. I do want to talk about the district court's construction. The PTO says that that actually supports them. It does not. They gave an ambiguous construction on it, which is our entire point of litigation appeal, that essentially the district court did a mixing and matching and said, instead of having to create it, it's the customized advertisement. And so it is not true that the district court's construction supports them. It's ambiguous. And that's why there was a confusion. We have an O2 argument in the litigation appeal. That's essentially the sum and substance of our litigation appeal. I do want to hit briefly the point about excluding versus including the preferred embodiment. Under our position, we think that it is actually Google and the PTO that is excluding the preferred embodiment. They have cited no evidence at all about anything in AdForce where there is creation at the central server. It is clear. There are references in the specification, admittedly, that talk about seller creation in our patent. But it is immediately followed every single time by references to the fact that at the PGP, at the central controller, it is created. It's on column 44, line 36 of the O2-5 patent. Explicitly new presentations are created in their entirety. And that is at the central server. They have not addressed that at all. And if that's true, then they are trying to exclude the preferred embodiment here. One final point on the 317 issue is that regardless of what happens, they cannot appeal or try to re-litigate those issues on the dependent claim. Those involve different claim construction issues. If this court were to rule for us on the litigation on creation and processing, they still would not be able to litigate those because those involve unappealed dependent limitations that do not depend at all upon the claim construction issues. And so because of that, it does not matter what happens in that appeal. It is a final and unappealable judgment that they are done with. And so therefore, collateral estoppel under 317B applies. Thank you, Your Honor. Thank you, counsel, for their argument. The case is submitted.